IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           Plaintiff,

     -v-

THE PREMISES AND REAL PROPERTY WITH
BUILDINGS, APPURTENANCES, AND
IMPROVEMENTS AT 4352 SOUTH PARK AVENUE,
THAT IS, ALL THAT TRACT OR PARCEL OF LAND,
SITUATE IN THE TOWN OF HAMBURG, COUNTY OF
ERIE, AND STATE OF NEW YORK, AND MORE
PARTICULARLY DESCRIBED IN A CERTAIN
DEED RECORDED IN THE ERIE COUNTY
CLERK'S OFFICE IN BOOK 10974 OF
DEEDS AT PAGE 2682,

           Defendant.

---

## **VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, Richard D. Kaufman, Assistant United States Attorney, of counsel, for its verified complaint herein alleges as follows:

1. This is an action in rem for the forfeiture of certain premises and real property under the provisions of 21 USC § 881(a)(7) and 18 USC §985.

2. This Court has subject matter jurisdiction of this action pursuant to the provisions of 28, USC §§ 1345 and 1355(a), and in rem jurisdiction pursuant to 28, USC §§

1

1355(b) and 1355(d).  Venue is properly premised in the Western District of New York pursuant to 28 USC § 1395.

3.    The defendant property was used as a place for the use, sale and/or distribution, and as a place to store quantities of heroin; a Schedule I controlled substance, as defined in Subchapter I of Chapter 13 §§801 et. seq., by ALEXANDER KISH.  The defendant property, therefore, is subject to seizure and forfeiture pursuant to 21, USC § 881(a)(7).

4.    The defendant property is a two story building with basement and four apartments available as rental units.  ALEXANDER KISH and his wife are the titled owners of the property.

**BACKGROUND**

5.    For the past 10 years, KISH has been known by Hamburg Police Department (HPD) to be the subject of numerous complaints reported to them for landlord-tenant disputes, harassment, and unwanted sexual conduct (one of which incidents resulted in the issuance of an order of protection).  It was also reported that KISH sold heroin to numerous females in exchange for sexual favors or cash.  No charges were ever pursued due to the reluctance of tenants who feared eviction if they testified against KISH.  The HPD brought KISH's heroin distribution to the attention of the Drug Enforcement Administration's (DEA) for further investigation into the heroin trafficking in Western District of New York.

6.      Two female undercover officers, hereinafter referred to as UC1 and UC2 were introduced to KISH in early December 2014 for the purpose of purchasing heroin.    KISH told the UCs that if they didn't have the money, the UCs could trade the heroin purchases for sex.  KISH supplied them with a substance he believed to be heroin on one occasion and supplied them with heroin on the occasions outlined below which were under the surveillance of law enforcement and all conversations between KISH and the UCs recorded:

7.      a.      On or about December 10, 2014, KISH telephonically called and spoke with the UCs in regard to supplying them with heroin and arranged a meeting at the defendant property.   At about 11:15 a.m. KISH arrived and entered the defendant property and the UCs arrived shortly thereafter.   UC1 called KISH to let him know that they were there and KISH told them to come into apartment 1.  KISH gave UC2 five bags (small glassine envelopes) of heroin and UC2 Gave KISH $75.   KISH gave the UC1 two bags of heroin and told UC1 that each bag cost $15 so the cost would be $30.   UC1 stated she only had $25, but would owe KISH the $5 at a later time.   KISH took the $25.   Prior to the UCS leaving, KISH intentionally touched UC1's breast without the UC's consent and continued to reach out until UC1 moved away from KISH.   As the UCs departed KISH gave each of them one of his financial planner business cards.   The "heroin" that was supplied to the UCs field tested negative and the UC1 called KISH and complained to him that it "wasn't any good."   KISH told UC1 that he would get new stuff for them.

b.    On or about December 15, 2014, UC1 telephonically called KISH in regard to obtaining heroin from KISH.   KISH made arrangements to meet the UCs at the defendant property.   The UCs arrived at the defendant property in one vehicle at about 12:11 a.m. and KISH arrived at approximately 12:15 a.m.   KISH walked over to the UC vehicle and told them to go into apartment 1 of the defendant property. Once inside, KISH told the UCs he was sorry for the stuff not being real heroin at the last deal and that he got better stuff this time.   KISH then gave UC1 five bags of heroin to replace the bad five bags UC1 had previously purchased and two bags to UC2 to replace the previously purchased heroin.   HPD field-tested the heroin with positive results.   The heroin was sent to Central Police Services Forensic Laboratory for further analysis and the field test results were confirmed and the weight was determined to be less than $1/8^{th}$ ounce for each sale.

c.    On or about December 18, 2014, KISH contacted the UCs telephonically to arrange to sell heroin to them at the defendant property.   Shortly after 6:55 p.m. KISH arrived at the defendant property and entered the building.   The UCs arrived and called KISH to tell him they were parked in the lot outside the defendant property.   KISH left the building and walked up to the passenger side window of the vehicle and handed UC1 a blue-colored rubber glove with ten bags of heroin inside a finger of the glove and two bags of heroin in another finger of the glove.   UC2 gave KISH $20 and UC1 gave KISH $150.   KISH then re-entered the defendant property.   HPD field-tested the heroin with positive results.   The heroin

was sent to Central Police Services Forensic Laboratory for further analysis and the field test results were confirmed and the weight was determined to be less than 1/8th ounce for each sale.

d.    On or about January 7, 2015, the UCs once again contacted KISH to purchase ten bags of heroin.   KISH arranged to meet them at the defendant property. Surveillance teams were set up by law enforcement and they observed KISH as he departed from his residence on Beubein Drive and stopped his vehicle to make the arrest of KISH with warrants obtained on December 30, 2014.   HPD had obtained a search warrant for the properties of 4153 Beaubein Drive, Hamburg, NY, and 950 Union Street, West Seneca, NY, the location of his business office (Alexander Kish, LLC), as well as the defendant property (4352 South Park Ave.) based upon the their investigation.

**SEARCH WARRANT EXECUTION**
**CURRENCY SEIZURES**

8.    The January 7, 2015 search of 4153 Beaubein Drive resulted in the seizure of $4,286.00 in U.S. currency and $45.00 in Canadian currency from a combination safe which was opened by KISH at the officers' request.   KISH advised officers that he was the only one with access to the safe.   Twenty-nine firearms and their holsters, which had been legally obtained by KISH or his family members, were also located and seized.   The search of his office on 950 Union on January 7th resulted in the seizure of $2,160.00 in U.S. currency from

a locked desk drawer.   KISH stated that he was the only one who had access to the locked office and the locked desk drawer.   Computer and related equipment and media were seized as evidence.   Officers also located eight blue and white pills that were seized for testing and further identification.   KISH was compliant during the searches and voluntarily opened the locked areas.   The DEA has initiated administrative forfeiture proceedings on the two sums of currency.

9.      On or about January 10, 2015, a drug-detection dog, K-9 Endy, alerted to the two sums of currency during a currency sniff in a room of the Town of Hamburg Police Department where the seized sums of currency had been concealed.   K-9 Endy's alert indicated that the two currency seizures had been in contact with one of the substances that K-9 Endy was trained to detect at the time of seizure:     K-9 Endy is not trained to alert on currency that is in general circulation and receives continual training and testing in order to alert on currency contaminated with marijuana, cocaine, heroin, ecstasy and/or methamphetamine.   Endy is certified as an Advanced Narcotics Police K-9 Team by the New York State Bureau of Municipal Police Services and had been re-certified in May 2014 by the National Canine Officers.

**SEARCH WARRANT EXECUTION**
**HEROIN SEIZURE**

10.     On January 7, 2015, the agents and officers from DEA, HPD and Cattaraugus County Sheriff's conducted the search at the defendant property.   KISH led officers to the

6

basement of the building and to the storage area which was unlocked by KISH using the same master key that he had used for his home safe and office door and desk drawer.   Ten bags of heroin were located on a high shelf in the storage area and were the bags of heroin that KISH had intended to sell to the UCs that he had arranged to meet at the defendant property that day.   A surveillance monitor and its DVR recorder were also located and seized.   The heroin field tested positive for the presence of heroin and was sent to Central Police Services Forensic Laboratory for further analysis.

## CRIMINAL CHARGES AGAINST ALEXANDER KISH

11.    KISH was charged with nine B felonies to include four (4) counts of Criminal Sale of a Controlled Substance in the 3rd degree, NYPL 220.39, five (5) counts Criminal Possession of a Controlled Substance with Intent to Sell, NYPL 220.16, one (1) count Criminal Possession of a Controlled Substance in the 7th degree, NYPL 220.03, and one (1) count Forcible Touching, NYPL 130.52.   The criminal charges remain pending in Erie County after KISH waived a felony hearing in Town of Hamburg Court.

12.    On January 7, 2015, in a recorded, and with KISH's consent, discussion with officers, KISH admitted to selling heroin to previous female tenants and made mention that once his wife found out about the criminal charges, which would confirm what she had heard from the previous tenants, she would divorce him.

## CONCLUSION AND REQUEST FOR RELIEF
## AND
## REQUEST FOR WRIT OF ENTRY

13.     In conclusion, and based upon the preponderance of the evidence, law enforcement submits that ALEXANDER KISH utilized the defendant property, 4352 South Park Avenue as a place to store and distribute controlled substances.    Since the distribution of and possession with intent to distribute heroin is a felony under the provisions of 21 USC § 841, the defendant real property, is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21, USC § 881(a)(7).

14.     The United States does not request authority from the Court to seize the defendant property at this time.   The filing of the Verified Complaint for Forfeiture will not release the owner(s), of any obligation for payment of property, utility, or any other tax or service on the defendant property.   The owner(s) remains responsible for the upkeep, routine maintenance, and any demolition costs if demolition is warranted for the defendant property. The United States will, as provided by 18, USC §§ 985(b)(1)(2)and (c)(1):

(a)     post notice of this Complaint on the defendant property; and
(b)     serve notice of this action on the defendant property owner along with a copy of this Complaint; and
(c)     execute a Writ of Entry for the purpose of conducting an inspection and inventory of the property; and
(d)     file a Notice of Lis Pendens in county records of the defendant property's status as a defendant in this in rem forfeiture action.

15.     Title 18, U.S.C.   § 985(c)(3) provides that, because the United States will post notice of this Complaint on the defendant real property, it is not necessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the defendant real property.   Title 18, U.S.C. § 985(b)(2) clearly states that the filing of a lis pendens and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection.

16.     Therefore, the United States respectfully requests, under 18 U.S.C. § 985(b)(2), and under 18 U.S.C. § 983(j), which permits the Court to "take any other action to...preserve the availability of the property subject to civil forfeiture", that the Court issue the government's proposed Writ of Entry authorizing the United States Marshals Service or its designee, to enter the defendant real property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

(a)     for the purpose of conducting an inspection and inventory and appraisal of the defendant real property, which inspection and inventory and appraisal may include still and video photography; and

(b)     to be accompanied on such occasion by any appraisers selected by it to appraise the condition and value of the defendant real property pursuant to 19 USC § 1606; and

(c)     to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the defendant real property; and

(d)     to be accompanied on any such occasion by any federal, state, and local law enforcement officers selected by it to ensure   the safety of any person acting under the Writ of Entry.

WHEREFORE, the plaintiff requests the following relief:

(1)     That a Notice of Complaint for Forfeiture Against Real Property be issued for the defendant real property;

(2)     That the Court issue a Writ of Entry authorizing the United States Marshals Service or its designee, to enter the defendant real property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action;

(3)     That notice of this action be given to all persons known or thought to have an interest in or right against the defendant property;

(4)     That a judgment be entered declaring the defendant real property condemned and forfeited to the United States of America for disposition in accordance with the law;

(5)     That the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this court deems proper and just.

DATED:     Buffalo, New York, March 19, 2015.


                                        WILLIAM J. HOCHUL, JR.
                                        United States Attorney

                            BY:     s/Richard D. Kaufman
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Western District of New York
                                        138 Delaware Avenue
                                        Buffalo, New York 14202
                                        (716) 843-5871
                                        richard.kaufman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

    -v-

4352 SOUTH PARK AVENUE,

        Defendant.

---

STATE OF NEW YORK  )
COUNTY OF ERIE     ) ss:
CITY OF BUFFALO    )

    GLENN ZAWIERUCHA, being duly sworn, deposes and says:

    I am a Task Force Agent with the Drug Enforcement Administration in the Buffalo Regional Office and I am assigned to the forfeiture case against 4352 South Park Avenue, Hamburg, New York.   The facts alleged in the Complaint for Forfeiture are true to the best of my knowledge and belief based upon my investigation and information officially furnished to me by the Hamburg Police Department and the Drug Enforcement Administration and provided to the United States Attorney's Office.

                        s/Glenn Zawierucha
                        Task Force Agent
                        Drug Enforcement Administration

Subscribed and sworn to before
me this 18th day of March, 2015.

    s/Patricia L Young
        Notary Public

    **PATRICIA L. YOUNG**
  **Notary Public, State of New York**
  **Qualified in Niagara County**
  **My Commission Expires: 11-13-2017**

11

**SCHEDULE A**

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg, County of Erie and State of New York, being part of Lot No. 56, Township 9, Range 7 of the Holland Land Company's Survey and according to a map filed in the Erie County Clerk's Office under Cover No. 893 is known and distinguished as Subdivision Lots Numbers 35, 36, 37 and 38 and the westerly 16 feet of Subdivision Lot Number 66.

Book of Deeds 10974 Page 2682 of the Erie County Clerk's Office

**SCHEDULE "A"**